**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Martha A. Luce, | : | Case No. 3:07 CV 3896 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner of Social Security, | : | **MEMORANDUM DECISION AND ORDER** |
| | : | |
| Defendant. | | |

Plaintiff seeks judicial review of a final decision of the Commissioner denying her application for Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U. S. C. §§ 1381 and 405(g). Pending are Briefs on the Merits filed by the parties and Plaintiff's Reply (Docket Nos. 16, 19 and 20). For the reasons set forth below, the Commissioner's decision is reversed and the case is remanded to the Commissioner pursuant to sentence four of 42 U. S. C. § 405(g).

**PROCEDURAL BACKGROUND**

Plaintiff applied for SSI on September 18, 2003, alleging that she had been disabled since July 1, 2003 because of lower back pain, headaches and arthritis in her knees and ankles (Tr. 65-66). The application was denied initially and on reconsideration (Tr. 46-48, 51, 52A, 53-55). Plaintiff's request for a hearing was granted and on November 7, 2006, a hearing was held by Administrative Law Judge (ALJ) Steven J. Neary (Tr. 401). Plaintiff, represented by counsel, Loretta Wiley, and Vocational Expert (VE) Joseph Thompson

appeared and testified.  On June 4, 2007, the ALJ rendered an unfavorable decision finding that Plaintiff was not disabled as defined under the Act and that she could perform her past relevant work as a cashier and a housekeeper (Tr. 26-36).  The Appeals Council denied Plaintiff's request for review on October 24, 2007, thereby rendering the ALJ's decision the final decision of the Commissioner (Tr. 16-18).

On October 29, 2007, Plaintiff requested that the Appeals Council vacate the decision denying review (Tr. 12-13).  Plaintiff requested a copy of the recordings and exhibits on December 20, 2007 (Tr. 10-11).  On January 7, 2008, the Appeals Council provided Plaintiff with copies of exhibits and duplicate recordings of the hearing and left the record open for twenty-five days for submission of new evidence.  (Tr. 4-5).

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006).

## FACTUAL BACKGROUND

*1.    Plaintiff's Testimony*

Plaintiff testified at the administrative hearing that she was 38 years old, 5'4" tall and weighed 290 pounds (Tr. 403, 404).  Plaintiff was married and had two minor children.  Plaintiff completed the tenth grade (Tr. 404).  She was last employed in 2003 (Tr. 404) for approximately eighteen months as a housekeeper at two hotels (Tr. 404, 405).  Earlier, she had also worked as a dishwasher and cashier (Tr. 405).

Plaintiff testified that she was unable to work due to shoulder, lower back and foot pain, migraine headaches, carpal tunnel syndrome and depression (Tr. 405, 408, 413-414).  Her pain was exacerbated by environmental factors such as rain.  The pain usually started in her back and radiated up to her shoulders, arms, neck and head.  Standing caused hip and leg pain.  During the past six months, Plaintiff had headaches

two to three times a week (Tr. 406). When the headaches occurred, Plaintiff confined herself to bed in a dark, soundproof room (Tr. 407, 412). The symptoms associated with carpal tunnel syndrome limited the use of her hands (Tr. 408). Plaintiff's depression was evidenced by mood swings and crying spells (Tr. 414). She had undergone physical therapy, and she was taking medication (Tr. 410).

Plaintiff could bathe and dress herself (Tr. 409). She spent up to four of an eight hour period lying down (Tr. 415). Approximately twice weekly, Plaintiff stayed in bed or on the couch during the entire day (Tr. 411). Plaintiff estimated that she could (1) not walk more than one half of a block because her body tightened, (2) not stand longer than fifteen minutes because of back pain, (3) sit up to twenty minutes at a time (4) lift up to ten pounds and (5) occasionally manipulate and hold items (Tr. 407, 408, 412).

Plaintiff did not perform many household tasks. Although it caused her back to pinch and incited pain in her shoulders, Plaintiff did the laundry when necessary. She did attend her son's sporting events and occasionally she shopped (Tr. 409). She drove only when she had to go to the grocery store (Tr. 410). Plaintiff estimated that she slept five hours nightly (Tr. 414). Occasionally, she had to use a cane to "get up" (Tr. 411).

*2.     VE Testimony*

The VE testified that an individual of Plaintiff's age, education and past relevant work history, limited to light exertional work and occupations that require more than occasional climbing or kneeling and simple, routine tasks, could perform work as a cashier and housekeeper as they are usually performed (Tr. 417). If limited to sedentary exertion, the hypothetical claimant could not perform work as a cashier or housekeeper. The hypothetical claimant could, however, perform work as an order clerk, telephone clerk and surveillance monitor. There would be approximately 1,000, 250 and 1,500 such positions, respectively (Tr. 417). Severe headaches two to three times per week, the inability to get out of bed and pain as reported by Plaintiff would

eliminate all employment (Tr. 418).

## MEDICAL EVIDENCE

**1.      Nicholas Lopez, M.D.**

On or about July 21, 2003, Dr. Lopez diagnosed Plaintiff with a thyroid disease. He prescribed medication to treat a runny nose (Tr. 231). A week later, Dr. Lopez administered a shot to relieve severe headaches (Tr. 230). On or about August 28, 2003, Dr. Lopez diagnosed Plaintiff with bilateral arthritis, waffling of both knees, inflammation of synovial membrane, possible meniscus injuries, hypertension and obesity (Tr. 229). Dr. Lopez provided a release from work on September 22, 2003, stating that Plaintiff suffered from diffuse pain in the neck and shoulder area, cephalgia with nausea, arthralgias, myalgias and thyroid disease (Tr. 176). In October, Dr. Lopez attempted to regulate Plaintiff's elevated blood pressure with medication while also treating her for bronchitis, sinusitis, upper respiratory tract infection and abnormal contraction of the bronchi (Tr. 228).

On or about January 14, 2004, Dr. Lopez concentrated on treating symptoms related to sinusitis and the upper respiratory tract infection with drug therapy (Tr. 226). In May, Dr. Lopez observed that Plaintiff's bursa was inflamed, she had muscle pain and the tissue connecting her heel and toe was also inflamed (Tr. 222). In June 2004, Dr. Lopez prescribed "a little bit more" pain reliever because of complaints of bilateral knee pain (Tr. 294). On July 29, 2004, Dr. Lopez referred Plaintiff to physical therapy and continued the prescription for a pain reliever (Tr. 292). He detected irritated nerves in Plaintiff's extremities on August 26, 2004 (Tr. 291). On September 29, 2004, Dr. Lopez altered Plaintiff's medication in response to worsening migraine headaches (Tr. 289). In October, he added an anti-inflammatory agent to the drug therapy (Tr. 288). In December, he prescribed medication for a sore throat and abdominal pain (Tr. 286).

Dr. Lopez prescribed a new medication designed for the treatment of depression and/or anxiety on

January 18, 2005 (Tr. 285). He prescribed another antidepressant on March 18, 2005 (Tr. 283). A narcotic was prescribed on April 22, 2005, to treat chronic back pain. Additionally, an antibiotic was prescribed to treat bronchitis and sinusitis (Tr. 282). Dr. Lopez prescribed a steroid to help with breast soreness on May 19, 2005 (Tr. 281). Dr. Lopez injected an antibacterial drug intramuscularly on June 16, 2005 (Tr. 279). In July 2005, he followed up treatment with a topical antibacterial medication (Tr. 278). Plaintiff was prescribed migraine prevention medication on August 22, 2005 (Tr. 277). Additional narcotic pain medication was dispensed in September, October and November 2005 for relief from low back pain (Tr. 274, 275, 276). In November 2005, Dr. Lopez prescribed a different migraine medication (Tr. 274). Conscious that Wellbutrin did not facilitate weight gain, Dr. Lopez prescribed it on December 20, 2005 (Tr. 273). Dr. Lopez continued the prescription for OxyContin on March 20, 2006 (Tr. 270).

In January 2006, Dr. Lopez prescribed OxyContin (Tr. 272). He prescribed another headache relief medication in February 2006 (Tr. 271). He continued all medications in June 2006 (Tr. 319).

Finally, on June 21, 2006, Dr. Lopez described Plaintiff's medical condition as including low back syndrome, osteoarthritis bilateral knees, bursitis, inflammation of tissue between the toes and heels, migraines, depression, obesity and carpal tunnel syndrome. He opined that Plaintiff's condition was poor but stable (Tr. 386). In his opinion, Plaintiff could stand/walk and sit for one half hour each (Tr. 387). She had marked limitations in her ability to push/pull, bend, reach, handle and engage in repetitive foot movements. Her impairment would last for more than twelve months; consequently, Plaintiff was unemployable (Tr. 387).

Overall she had moderate limitation in her ability to, *inter alia*, see, hear, speak, interact with the public, maintain socially appropriate behavior or set realistic goals (Tr. 387-388). At that time, Plaintiff was taking medication to treat hypertension, migraine headaches, depression and chronic pain syndrome (Tr. 390).

### 2. Michael Cardinal, Doctor of Podiatric Medicine (D.P.M.)

On September 29, 2003, Dr. Cardinal found that Plaintiff had ankle instability and an inward angulation of her heel, all complicated by obesity. She was advised to continue with her ankle brace and she was cast for orthotics (Tr. 180). X-ray reports dated July 24, 2003, showed no acute abnormalities of Plaintiff's ankles (Tr. 181).

### 3. Bay Park Community Hospital

On July 25, 2004, Plaintiff presented to the emergency room with low back pain. She was prescribed a narcotic and medication designed to relieve muscle spasms (Tr. 245).

### 4. Physical Residual Functional Capacity Assessment

On November 5, 2003, John L. Mormol, M.D., concluded, after review of all evidence in the file, that Plaintiff could occasionally, lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and push and/or pull on an unlimited basis (Tr. 185). Dr. Mormol further opined that Plaintiff had the capacity to crouch and occasionally climb using a ladder/rope/scaffold (Tr. 186). The record revealed no signs of manipulative, visual, communicative or environmental limitations (Tr. 186, 187).

### 5. K. Roger Johnson, Master of Education (M.Ed.).

Mr. Johnson conducted a psychological evaluation on December 18, 2003 during which he administered the Wechsler Adult Intelligence Scale, the Wechsler Memory Scale and the Kaufman Test of Educational Achievement Reading Comprehension (Tr. 191, 192). Plaintiff's overall intellectual functioning level was borderline, she showed no sign of memory impairment and she was considered a weak reader (Tr. 192). Mr. Johnson diagnosed Plaintiff with a depressive disorder, borderline intellectual functioning, back

pain, economic stressors, some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well and as having some meaningful interpersonal relationships for purposes of measuring cognitive functioning. He noted that Plaintiff's motor skills and ability to maintain attention to perform simple repetitive tasks were not impaired. Her ability to withstand the stress and pressure of day-to-day work activities was mildly impaired (Tr. 193).

6.	**Joanne Kadle, Ph.d.**

   A.	**Psychiatrist Review Technique Form.**

   On January 15, 2004, Dr. Kadle found that Plaintiff had a depressive disorder, not otherwise specified and borderline intellectual functioning which had a mild effect on her activities of daily living and maintaining social functioning and a moderate effect on difficulties maintaining concentration, persistence or pace (Tr. 187, 198, 204).

   B.	**Mental Residual Functional Capacity Assessment**.

   Dr. Kadle opined that Plaintiff's ability to carry out detailed instructions, complete a normal weekday and workweek without interruption from psychologically based symptoms and respond appropriately to changes in the work setting were moderately limited by her impairments (Tr. 207-208).

7.	**Magnetic Resonance Imaging (MRI) Center.**

   On January 21, 2004, Plaintiff underwent an MRI of her right knee. Evidence of arthritis symptoms, bone fracture and edema were present. The bone fracture and associated edema were attributed to prior trauma/degenerative changes (Tr. 216).

8.	**Mahdi Doumet, Medical Doctor (M.D.)**

   Dr. Doumet treated Plaintiff once on May 5, 2004. Dr. Doumet acknowledged Plaintiff's recurring symptoms associated with sinusitis/upper respiratory infection, runny nose, hypertension, migraines,

7

depression and back pain. He prescribed, *inter alia*, a pain reliever and antibiotics (Tr. 220).

**9.     St. Luke's Hospital**.

Plaintiff was treated on May 24, 2004, for abdominal pain and burning/frequent urination. She was prescribed an antibiotic and medication designed to treat pain, burning and increased urination (Tr. 342, 345). On June 30, 2004, the imaging of Plaintiff's lower extremities showed no deep vein thrombosis bilaterally (Tr. 310). The results from the computed tomography (CT) scan of Plaintiff's abdomen and pelvis taken on October 11, 2004 were normal (Tr. 358). The results of the pelvic ultrasound performed on November 20, 2004 showed a 5.5 x 5-centimeter cyst on Plaintiff's left ovary (Tr. 357).

A hematology report resulting from specimens collected on May 24, 2005 showed an elevated white blood cell count (Tr. 256). The blood urea nitrogen levels were also elevated (Tr. 257).

No abnormalities were noted during shoulder movement and Plaintiff's reflexes were normal when tested on March 29, 2006 (Tr. 369). A therapy plan was employed to decrease shoulder pain (Tr. 367). Plaintiff cancelled or failed to appear for the first three appointments (Tr. 361-363).

**10.    Michael D. Wagner, Ph.d**.

Dr. Wagner reviewed the evidence in the record and on October 5, 2004, he found that Plaintiff's allegations, although partially credible, did not cause significant functional impairment. He affirmed Dr. Kadle's assessment described above (Tr. 247).

**11.    Maggi S. Smith, D.P.M.**

On December 6, 2004, Dr. Smith prescribed Motrin for treatment of heel spur syndrome and pain in the tissue between the toe and heel (Tr. 331). In December 2004, Plaintiff was casted for custom molded orthotic devices (Tr. 332).

Dr. Smith dispensed the completed orthotic in February 2005. Dr. Smith recommended physical

therapy on March 14, 2005 (Tr. 332).

12. **Timothy Duckett, M.D.**

On June 2, 2005, Dr. Duckett conducted an evaluation to determine the presence of gall stones (Tr. 248-249). Dr. Duckett removed four stones from Plaintiff's cystic duct on June 17, 2005 (Tr. 252-253).

13. **Robert Kalb, M.D.**

On September 26, 2005, Dr. Kalb evaluated Plaintiff's complaints of pain in her knees, shoulders and ankles. Physical therapy was recommended to treat shoulder impingement. Plaintiff was encouraged to lose weight (Tr. 318). Dr. Kalb administered injections, bilaterally, that were designed to provide knee pain relief on September 20, 2005 and October 4, 2005 (Tr. 315-316).

14. **Medical College of Ohio (MCO).**

On January 25, 2006, Plaintiff was treated for symptoms of a migraine headache. Her medication was refilled (Tr. 261-267). On August 9, 2006, Plaintiff was treated for chronic pain. A medication designed for short-term use to treat severe pain was prescribed (Tr. 392, 393).

15. **St. Anne Mercy Hospital.**

On June 5, 2006, Dr. Gary F. Swann treated Plaintiff for dysfunctional uterine bleeding and severe uterine pain during menstruation (Tr. 374, 379). Dr. Swann surgically viewed Plaintiff's uterus and removed material from the lining of the uterus (Tr. 374, 380, 382).

16. **Janis Zimmerman, MD**

Dr. Zimmerman conducted a general evaluation on October 18, 2006, and ordered a sleep study (Tr. 322, 325).

## **STANDARD OF DISABILITY**

The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims

of disability. *Heston v. Commissioner of Social Security,* 245 F.3d 528, 534 (6th Cir. 2001) (*citing Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)). First, plaintiff must demonstrate that he or she is not currently engaged in "substantial gainful activity" at the time he or she seeks disability benefits. *Id.* ( *citing* 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id.* A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* ( *citing* 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.* (*citing* 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, if the plaintiff's impairment does not prevent her or him from doing his or her past relevant work, plaintiff is not disabled. *Id.* For the fifth and final step, even if the plaintiff's impairment does prevent him or her from doing past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.* (*citing Abbott,* 905 F.2d at 923).

## **ALJ'S DETERMINATIONS**

Employing the standard of disability, the ALJ considered the testimony adduced at the hearing and the medical evidence set forth above and made the following findings:

1. Plaintiff had not engaged in substantial gainful activity since July 1, 2003.

2. Plaintiff had severe impairments: osteoarthritis, right knee bursitis, complaints of back pain, obesity, reports of headaches, a depressive disorder, not otherwise specified and borderline intellectual functioning. These medically determinable impairments did not meet or medically equal one or more of the listed impairments in 20 C. F. R. Part 404, Subpart P, Regulation No. 4.

3. Plaintiff had the residual functional capacity to perform unskilled simple, routine, work tasks at a light exertional level with only occasional kneeling and occasional climbing of ropes, ladders or scaffolds.

    4.      Plaintiff was capable of performing her past relevant work as a cashier and as a housekeeper, both as she performed the jobs and as they were usually performed. This work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

    5.      Plaintiff was not under a disability as defined in the Act since September 10, 2003, the date her application was filed.

(Tr. 26-36).

This decision became the final decision of the Commissioner on October 27, 2007, when the Appeals Council denied review (Tr. 16-18). Plaintiff seeks judicial review.

## STANDARD OF JUDICIAL REVIEW

Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (1994) (*citing Richardson v. Perales,* 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied,* 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id*. (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Id*. (*citing Kirk*, *supra*, 667 F.2d at 536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

**DISCUSSION**

**1.      The ALJ Erred in Assessing Residual Functional Capacity.**

Plaintiff argues that the ALJ decision is internally inconsistent regarding her residual functional capacity. Such inconsistency resulted in an erroneous finding that Plaintiff can return to her past relevant work. The Magistrate is persuaded that the ALJ's finding that Plaintiff has the residual functional capacity for light work is not supported by substantial evidence.

Claimant has the burden of proof at Step Four of the sequential analysis that she or he cannot return to past relevant work. *Allen v. Califano*, 613 F. 2d 139 (6th Cir. 1980). In order to meet this burden, the claimant must generally show an inability to return to the particular job(s) she or he performed in the past fifteen years, as well as the inability to perform similar work as it exists in the national economy. *Id.* At Step Four, the ALJ must assess whether the claimant retains the residual functional capacity to perform his or her past relevant work. Residual functional capacity is the most the claimant can still do despite his or her limitations. 20 C. F. R. § 404.1545 (a)(1) (Thomson Reuters/West 2008).

In this case, the ALJ found that Plaintiff was capable of performing the basic exertional requirements of light work as such work is defined for Social Security purposes. Under the regulations, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C. F. R. § 404.1567 (b) (Thomson Reuters/West 2008). A job in the "light work" category requires a good deal of walking or standing or when it involves sitting most of the time, requires some pushing and puling of arm or leg controls. 20 C. F. R. § 404.1567 (b) (Thomson Reuters/West 2008). To be considered capable of performing a full range of light work, the claimant must be able to do substantially all of these activities. 20 C. F. R. § 404.1567(b) (Thomson Reuters/West 2008).

The ALJ in this case either failed to apply the correct legal standard or his factual conclusions are not

supported by substantial evidence. On one hand, the ALJ makes a definitive finding that Plaintiff can perform a full range of light work (Tr. 35). Alternately, he attributed significant weight to the opinion of the state agency medical source who found that Plaintiff may be precluded from performing light work due to the collective effects of obesity, arthritis, edema and ankle pain (Tr. 35). Clearly these impairments were not included in the ALJ's assessment of Plaintiff's residual functional capacity or in determining whether she could perform her past relevant work. Plaintiff is entitled to an order remanding her case to the Commissioner, pursuant to sentence four of 42 U. S. C. § 405(g), with directions to reevaluate and explain whether, given her residual functional capacity, she can perform light work. This determination may require that the Commissioner re-assess step five of the sequential evaluation and redetermine if Plaintiff is entitled to SSI.

**2.    The ALJ Erred in His Assessment of the Treating Physician**.

Plaintiff contends that the ALJ committed four errors in his treatment of evidence presented by a treating source. First, Plaintiff argues that the ALJ failed to set forth the standard for review. Second, the ALJ failed to provide good cause for failing to adopt Dr. Lopez's opinions. Third, the ALJ failed to adopt Dr. Lopez's assessment of Plaintiff's residual functional capacity. Fourth, the ALJ attributed more weight to the non-examining state agency source opinions than to those of the treating source. Fifth, the ALJ failed to apply the regulatory factors of 20 C. F. R. § 416.927(d) (2) to the opinion of Dr. Kalb.

**A.    Treating Physician Standard.**

Plaintiff correctly points out that the ALJ did not separately describe the treating physician rule or the weight requirement for treating physician opinions. He did, however, refer to the regulation describing the rule and made a general reference to his consideration of the rule. Plaintiff has failed to demonstrate that the failure to separately mention the weight requirement constituted reversible error. The Magistrate is not

persuaded that this failure by itself constitutes a harmful error of law.

      **B.      Good Cause.**

Plaintiff contends that Dr. Lopez was a treating source; thus, the ALJ failed to explain why his opinions are not entitled to controlling weight. The Social Security Administration must always give good reasons for the weight given a treating source's opinions. *Bass v. McMahon,* 499 F. 3d 506, 509 (6th Cir. 2007). In this case, the ALJ found that Dr. Lopez had not established a treating relationship with Plaintiff, his reports were internally inconsistent and there was a lack of objective medical evidence supporting his conclusions (Tr. 32). The Magistrate does not comment on the merits of the ALJ's reasons. The Magistrate does find that the ALJ clearly gave good reasons for discounting Dr. Lopez's opinions.

      **C.      Residual Functional Capacity.**

With respect to Plaintiff's claim that the ALJ failed to adopt Dr. Lopez's assessment of Plaintiff's residual functional capacity, Dr. Lopez's observations about what Plaintiff could do despite her impairments, without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b). Medical opinions are assertions involving judgments about a patient's "symptoms, diagnosis and prognosis." 20 C. F. R. § 404.1527(a) (2) (Thomson Reuters/West 2008).

Dr. Lopez's care was focused on diagnoses and treatment. Dr. Lopez responded and recorded medical evidence of Plaintiff's complaints of migraine headaches, sinusitis, obesity, arthritis, low back syndrome, osteoarthritis bilateral knees, bursitis, inflammation of tissue between the toes and heels, migraines, depression, obesity and carpal tunnel syndrome. Dr. Lopez prescribed pain relievers and other medication for maintenance of hypertension and depression. Even if the ALJ had given controlling weight to this evidence, Dr. Lopez' treatment records offer few observations of what Plaintiff could do despite her limitations. Dr. Lopez records provide no evidence that he had any opinion about Plaintiff's residual

functional capacity. Consequently, the ALJ was unable to attribute controlling weight to non-existent opinions.

**D.     Non-examining State Agency Consultant.**

Plaintiff claims that Dr. Lopez' opinion is consistent with the opinion of Dr. Mormol, a state agency consultant. The regulations mandate that unless the treating physician's opinion is given controlling weight, the ALJ *must explain* in the decision the weight given to the opinions of a state agency medical or psychological consultant or other program physician or psychologist, as the ALJ must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for the Social Security Administration. 20 C.F.R. § 416.927(f)(2)(ii) (Thomson Reuters/West 2008).

Since the ALJ did not give controlling weight to the opinions of a treating source, he was required to explain in the decision the weight given to the opinions of the state agency medical consultant. The ALJ followed the regulations and explained the weight given to the state agency medical consultant's opinions (Tr. 35). The ALJ's decision contains no indication that he failed to comply with the provisions of 20 C. F. R. § 416.927(f)(2)(ii).

**E.     Dr. Kalb.**

In Plaintiff's opinion, the ALJ's decision does not accurately weigh Dr. Kalb's decision under 20 C. F. R. § 416.927(d) (2). Under Section 416.927(d)(2), unless a treating source's opinion is given controlling weight under paragraph (d)(2) of this section, the following facts are considered in deciding the weight given to any medical opinion: (1) Examining relationship, (2) Treatment relationship including the (i) length of the treatment relationship and the frequency of examination and (ii) nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization and (6) Other factors presented by the claimant.

The ALJ did evaluate Dr. Kalb's decision, applying the facts under Section 927(d)(2). He noted that Dr. Kalb, an orthopedic specialist, administered two injections for pain relief, examined Plaintiff on three occasions, that the nature and extent of his examination were extensive and that his results were reached after administering X-rays, the Thompson, McMurray and Drawer testing. He noted that Dr. Kalb was unable to sustain certain limitations within his treatment record after he examined Plaintiff and administered the tests (Tr. 31, 33). There is no evidence that the ALJ overlooked other factors presented for consideration by Plaintiff.

**3      The ALJ failed to Accurately Assess Plaintiff's Obesity.**

Plaintiff argues that the ALJ failed to discuss whether obesity could reasonably cause the pain she experienced in combination with her other documented physical impairments such as bilateral knee arthritis and low back pain. The Magistrate construes this argument as a claim that the combined effect of obesity with other impairments may be greater than might be expected without obesity.

The Commissioner's Regulations no longer contain a separate Listing for obesity. *Combs v. Combs v. Commissioner of Social Security*, 459 F.3d 640, 643-644 (6th Cir. 2006). However, the Listing contains the following mandate: "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicator's must consider any additional and cumulative effects of obesity." 20 C. F. R. Pt. 404, Subpt. P. App. 1, Listing 1.00Q (Thomson Reuters/West 2008). SOCIAL SECURITY RULING (SSR) 02-01p, 2000 WL 628049, reinforces the regulation's mandate regarding obesity. At Step 2, an individualized assessment of the impact of obesity on an individual's functioning shall be made when deciding whether the impairment is severe. *Id.* at *4. At Step 3, based on the information in the case record, the fact finder must consider obesity in combination with another

impairment that may or may not increase the severity or functional limitations of the other impairment. *Id.* at *4-5. At Step 4, the fact finder must consider that the combined effects of obesity with other impairments may be greater than might be expected without obesity. *Id.* As with any other impairment, an explanation must be given regarding how the conclusion on whether obesity caused any physical or mental limitation was rendered. *Id.* at *6-7.

The ALJ acknowledged that Plaintiff was morbidly obese. Because the ALJ did not assess Plaintiff's morbid obesity at Steps 2, 3 and 4 of the sequential evaluation, his decision failed to comply with a mandatory procedural requirement set forth in the Commissioner's Regulations. Remand, pursuant to Sentence four of 405(g), is appropriate so that the Commissioner can assess Plaintiff's obesity consistent with the requirements of the Commissioner's Regulations.

## CONCLUSION

For these reasons, the case is reversed and remanded to the Commissioner to re-evaluate and explain whether Plaintiff has the residual functional capacity to perform light work. If she does not, the Commissioner must complete Step 5 of the sequential evaluation by assessing Plaintiff's obesity consistent with Steps 2, 3 and 4 of the sequential evaluation as described above and determine, whether based on these re-evaluations, Plaintiff is entitled to SSI.

**IT IS SO ORDERED.**

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date: February 9, 2009